[No. 33529. *En Banc.* December 5, 1956.]

PAUL G. LAUTERBACH *et al., Respondents,* v. THE CITY OF CENTRALIA, *Appellant.*[1]

[1]Reported in 304 P. (2d) 656.

D. D. *Schnatterly,* for appellant.

WEAVER, J.—The city of Centralia appeals from a judg-
ment which (a) restrains enforcement of that portion of
Centralia ordinance No. 973 purporting to give authority
to the city commission to rezone the city of Centralia with-
out first obtaining a recommendation or an approval of the
city planning commission; and (b) restrains enforcement
of ordinance No. 978 in so far as it purports to change the
use zone in which plaintiffs' property is located from a
residential-use district to a commercial-use district.

The handicap, arising from plaintiffs' failure to appear in
this court, is minimized by the well-considered memo-
randum opinion by the trial judge.

August 24, 1948, the city commission passed ordinance
No. 856, entitled "An ordinance creating a City Planning
Commission and prescribing its duties, authority and pro-
cedure." This ordinance was passed pursuant to chapter 44,
Laws of 1935, p. 115 (codified RCW 35.63). Section II of
ordinance No. 856 provides:

"The Planning Commission shall have all of the powers
and perform each and all of the duties specified by said
Chapter 44 of the 1935 Session Laws of the State of Wash-
ington, together with any other duties or authority which
may hereafter be conferred upon them by the laws of the
State of Washington, the performance of such duties and
*the exercise of such authority to be subject to each and all
the limitations expressed in such legislative enactment or
enactments.*" (Italics ours.)

Section 9 of the enabling act (Laws of 1935, chapter 44)
provides:

"Any ordinance or [ordinances], resolution [or resolu-
tions], adopting any such plan or regulations, or any part
thereof, may be amended, supplemented, [changed] or
modified by subsequent ordinance or resolution adopted
[by the council or board] *upon recommendation of or with*

*the concurrence of the commission.*" (Italics ours.) (Bracketed words appear in chapter 44, Laws of 1935, § 9, but have been omitted in RCW 35.63.120.)

Thereafter, a planning commission was appointed. The commission formulated a comprehensive zoning plan for Centralia. In due course, the plan was presented to the city commission for its consideration.

August 30, 1949, the city commission passed ordinance No. 882, entitled "An ordinance to regulate and restrict the location and use of buildings and the use of land within the city of Centralia, Washington . . ." The ordinance includes a map, designated as "The Map of the Zoning Ordinance of the City of Centralia," exhibited in the office of the city commission.

Consistent with Laws of 1935, chapter 44, § 9 (quoted *supra*), § 14 of the ordinance provides:

"Amendments 1. The City Commission may, upon proper petition and after public hearing, *and with the concurrence of the Planning Commission,* change by ordinance the district boundary lines or some classification as shown on the district map.

"2. The City Commission may, upon its own motion and after public hearing *and with the concurrence of the planning Commission* amend supplement or change by ordinance the regulations herein established." (Italics ours.)

In 1952, plaintiffs purchased a single family residence. It was located in a "residential use district," as defined in ordinance No. 882 passed several years prior to their purchase of the property. The trial court found that plaintiffs relied upon the zoning ordinance at the time of purchase.

April 20, 1954, the city commission adopted ordinance No. 973, which, *inter alia,* purports to amend § 14 of ordinance No. 882 to read as follows:

"1. The City Commission may, upon proper petition and after public hearing, change by ordinance the district boundary lines or some classification as shown on the district map.

"2. The City Commission may, upon its own motion and after public hearing, amend, supplement or change by ordinance the regulations herein established."

This amendment omits from § 14 of the ordinance the phrase, "and with the concurrence of the Planning Commission," inserted originally pursuant to Laws of 1935, chapter 44, § 9 (quoted *supra*).

The metamorphosis was complete when the city commission enacted ordinance No. 978 on July 20, 1954. This ordinance, among other things, purported to change certain zone classifications established by ordinance No. 882. In particular, it purported to change the zone in which plaintiffs' property is located from a residential-use district to a commercial-use district.

In this action, plaintiffs (respondents) contend that the purported change, initiated by ordinance No. 973 and completed by ordinance No. 978, is illegal and void as a matter of law. Whether the action of the city commission was arbitrary and capricious is not an issue before us.

The trial court found that the amendatory ordinances were passed by the city commission, after the planning commission had held public hearings thereon and refused to concur or recommend such change of classification, and were adopted over the express objections of the planning commission.

The trial court concluded, as a matter of law, that (a) that portion of ordinance No. 973 (quoted *supra*) which amends subsections 1 and 2 of ordinance No. 882 (quoted *supra*) is void, in so far as it purports to dispense with the necessity of the recommendation or concurrence of the planning commission in order to change district boundaries for zone classification; and that (b) that portion of ordinance No. 978 is void in so far as it purports to change the use zone, in which plaintiffs' property is located, from a residential-use district to a commercial-use district, because said change was not made upon the recommendation of or with the concurrence of the planning commission.

Although intertwined, two questions are presented by the conclusions of the trial court. First, can the city commission *dispense with the necessity* of the recommendation or concurrence of the planning commission, as a condition precedent to a change of district boundaries for zone classi-

fication; and, second, as stated by the trial judge in his memorandum opinion:

"Is it within the power of the City, which has previously enacted a comprehensive zoning ordinance under the authority of the enabling act found in Chapter 44, Laws of 1935, R.C.W. 35.63.010-.120, to amend, supplement or modify said ordinance [as to zone classifications] without first having obtained the recommendation or concurrence of the Planning Commission as required by Section 9, Chapter 44 of the Laws of 1935, R.C.W. 35.63.120?"

We limit our discussion to those two questions. Specifically, we are not called upon to consider § 11 of ordinance No. 882, which provides for appeals from the planning commission to the city commission when the planning commission grants or withholds *variance* permits. Here, we are dealing with the right of the city to change the zone classification of a portion of a district without the concurrence of the planning commission, and thus change the over-all plan previously recommended and adopted.

A municipal corporation is a body politic established by law as an agency of the state—partly to assist in the civil government of the country, but chiefly to regulate and administer the local and internal affairs of the incorporated city, town, or district. *Columbia Irr. Dist. v. Benton County*, 149 Wash. 234, 235, 270 Pac. 813 (1928). It has neither existence nor power apart from its creator, the legislature, except such rights as may be granted to municipal corporations by the state constitution.

The city of Centralia has a commission form of government and is governed by the laws applicable to second class cities. Under the statute (RCW 35.23.440), it is given certain specific powers. The power to zone property within its boundaries is not one of them.

The city argues that it has the right to adopt a zoning ordinance, by virtue of its police power, regardless of the statute; that its police power springs from Art. XI, § 11, of the state constitution; and that the statute (if it requires inclusion in the zoning ordinance of "the recommendation of or with the concurrence of the [planning] commission" be-

fore a zoning ordinance can be amended) is unconstitutional, because it is an unlawful delegation of power to the planning commission and infringes upon its police power granted by the constitution.

The answer to the city's first suggestion is this: Ordinance No. 856 discloses, on its face, that it was adopted "pursuant to the authority conferred by Chapter 44 of the Session Laws of 1935 . . ." The city did not purport to exercise its police power, regardless of the statute.

Art. XI, § 11, of the state constitution provides:

"Any county, city, town or township, may make and enforce within its limits all such local police, sanitary, and other regulations *as are not in conflict with general laws.*" (Italics ours.)

Laws of 1935, chapter 44, § 9 [*cf.* RCW 35.63.120], quoted *supra*, is a general law which operates uniformly upon any city availing itself of the powers conferred by the entire chapter. As the trial court pointed out:

"The general laws place a limitation upon the right of the city in its amendments; consequently, there is no interference by the legislature with the police power of the city. The city and its legislative body are still subordinate to the general law as directed in the constitution."

In *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 46, 120 Pac. 861 (1912), the court said of Art. XI, § 11:

"This section is subject to the same interpretation as § 10, and under it a general law becomes controlling. The words 'not in conflict with general laws,' as there employed, do not mean that municipal regulations passed in the absence of general laws foreclose the right of the state to assert its sovereignty, but merely that the police power may be exercised until such time as the state acts. They must then give way to the general law."

See also: *Patton v. Bellingham,* 179 Wash. 566, 38 P. (2d) 364, 98 A. L. R. 1076 (1934); *Seattle v. Proctor,* 183 Wash. 293, 48 P. (2d) 238 (1935).

The same answer meets the city's contention that the statute interferes with the people's right of initiative. In municipalities, the initiative must be exercised subject to the general law. It does not supersede or eliminate it.

■ The difficulty with the city's contention, that the questioned portion of the statute is an unconstitutional delegation of power to the planning commission, is that nowhere in the statute is the planning commission delegated the power to enact a zoning ordinance. To do so is the province of the city commission. The limitation imposed by the statute is not a delegation of power—it is a withholding of power—and the powers of the city commission are subject to such limitations as the legislature sees fit to impose upon it. *Misich v. McGuire,* 24 Wn. (2d) 758, 762, 167 P. (2d) 462, 171 P. (2d) 699 (1946), and cases cited.

■ The trial court did not err when it concluded that that portion of ordinance No. 973 which amends subsections 1 and 2 of ordinance No. 882 is void, in so far as it purports to dispense with the necessity of the recommendation or concurrence of the planning commission in order to amend a prior zoning ordinance.

The statutes of numerous jurisdictions require that matters appertaining to zoning must be referred to the planning commission; and that a report of the planning commission thereon, when required by statute, is a condition precedent to the validity of an amendment to a zoning ordinance. *Whittemore v. Town Clerk of Falmouth,* 299 Mass. 64, 12 N.E. (2d) 187 (1937); *State ex rel. Fairmount Center Co. v. Arnold,* 138 Ohio St. 259, 34 N.E. (2d) 777, 136 A. L. R. 840 (1941); *State ex rel. Luechtefeld v. Arnold,* (Mo.) 149 S.W. (2d) 384 (1941); *Armourdale State Bank v. Kansas City,* 131 Kans. 419, 292 Pac. 745 (1930); *Hasbrouck Heights Hospital Ass'n v. Borough of Hasbrouck Heights,* 15 N. J. 447, 105 A. (2d) 521 (1954); 8 McQuillin, Municipal Corporations (3d ed.), §§ 25.226, 25.245; 1 Yokley, Zoning Law and Practice (2d ed.), 148, § 70. See also: *Schofield v. Los Angeles,* 120 Cal. App. 240, 7 P. (2d) 1076 (1932).

Since the trial court found, as a fact, that amendatory ordinance No. 978 was passed by the city commission, after the planning commission had held public hearings thereon and refused to concur or recommend the change of classification, and was adopted over the express objections of

the planning commission, we assume, for the purpose of this opinion, that the necessary procedural steps were taken.

Can the city commission amend the zoning ordinance *contrary* to the recommendation or *without* the concurrence of the planning commission?

Although this appears to be a question of first impression in this state, we referred to a problem analogous to the instant one in *State ex rel. Lyon v. Board of County Com'rs.*, 31 Wn. (2d) 366, 373, 196 P. (2d) 997 (1948). Therein, the county commissioners granted a *variance* permit without referring the matter to the county planning commission. We held that the superior court was, under the facts, without jurisdiction to consider the appeal from the ruling of the board of county commissioners. In passing, the court said:

"Since we hold that the Pierce county superior court had no jurisdiction to consider the appeal from the board of county commissioners, the basic question referred to cannot be determined on this appeal. By reason of the fact that a session of the legislature probably will intervene before that question can again reach us, it seems not inappropriate to state that we entertain grave doubts as to whether any board of county commissioners possesses such authority, except as it may accomplish that purpose by a resolution amending, supplementing, changing, or modifying the zoning regulations of the county under the authority given it by § 9 of chapter 44, Laws of 1935 (Rem. Rev. Stat. (Sup.) § 9322-9), which provides that such a resolution *must be recommended or concurred in by the county planning commission.* This statement is for the benefit of the interested parties and is not an intimation on our part that we believe there should or should not be any amendment of the existing law." (Italics ours.)

Obviously, the statement is dictum; the court did not reach the question to which it alluded. However, the statement is indicative of the court's thinking, at that time, upon the interpretation to be given to Laws of 1935, chapter 44, § 9 (*cf.* RCW 35.63.120).

We have no quarrel with the city's argument that the word "may," as used in the statute, is a word of discretion

or permission and not of mandate. It does not follow, however, that the word "may" should be construed to allow amendment of the zoning ordinance without recommendation or concurrence of the planning commission. The planning commission may recommend an amendment. It is not mandatory that the city commission adopt the recommendation. In this sense, the action of the planning commission is advisory. *Lillions v. Gibbs, infra.*

The city's argument overlooks the qualifying prepositional phrase "upon recommendation of or with the concurrence of the commission." The preposition "upon," as used in the statute, connotes the same as "on condition that"; it indicates a state of dependence.

In those states where the statute simply requires a *report* of the planning commission, it may be that the city commission may act contrary to the *report*. The Washington statute, however, is more restrictive; it requires a recommendation that action be taken before the ordinance may be amended.

■ We agree with the conclusion of the trial judge when he said:

"The law of this state as to the particular provisions under discussion is different from that of the other states. Section 9, Chapter 44 of the laws of 1935 provides that amendments may be 'made upon the recommendation of or with the concurrence of the commission.' *These words cannot be disregarded.* They go further than the laws of other states where a recommendation and report or investigation may be required; and the wording of Section 9 is so clear as to leave no room for argument. The legislature intended to put some limitation upon the local legislative bodies." (Italics ours.)

Our conclusion is not inconsistent with our recent decision in *Lillions v. Gibbs*, 47 Wn. (2d) 629, 289 P. (2d) 203 (1955), published subsequent to entry of judgment in the instant case. Therein, the planning commission recommended that a rezoning petition be granted. The board of county commissioners unanimously denied the petition. Clearly,

"The adoption or rejection of its [planning commission's] recommendations lies solely within the sound discretion of the board [of county commissioners]."

We held, under the facts, that mandamus would not lie to compel the board of county commissioners to rezone appellant's property.

While the *Lillions* case, *supra*, is authority for the rule that the local legislative body is not bound to adopt the recommendation of the planning commission, it is not authority for the rule that the local legislative body may amend a zoning ordinance *without* the recommendation of or with the concurrence of the planning commission. The case illustrates the significance of the word "may" in the statute.

The judgment is affirmed.

DONWORTH, C. J., MALLERY, SCHWELLENBACH, HILL, FINLEY, FOSTER, and ROSELLINI, JJ., concur.

OTT, J. (dissenting)—I cannot agree with the majority's contention that "The city [of Centralia] did not purport to exercise its police power, regardless of the statute [chapter 44, Laws of 1935, p. 115]."

Zoning is a proper exercise of the police power. See *Lillions v. Gibbs*, 47 Wn. (2d) 629, 289 P. (2d) 203 (1955). Art. XI, § 11, of the state constitution, grants to cities and towns the power to make and enforce police regulations within their corporate limits, *the only constitutional limitation being that such regulations shall not conflict with the general laws of the state.*

Chapter 44, Laws of 1935, p. 115 (RCW 35.63), was enacted as an exercise of the *state's* police power. The act does not deny a city the right to exercise its zoning power, as derived from the constitution, within its own territorial limits. It provides a suggested procedure for local planning, and authorizes qualified cities and towns to participate in regional planning. The statute grants power which the city did not otherwise have. The act provides that, "*If any council or board desires to avail itself of the powers conferred by this act,*" it must meet the requirements of

the act. It follows that a city would have no right to participate in the authorized regional plans, unless it brought itself within the provisions of chapter 44, Laws of 1935.

By ordinance No. 856, adopted August 24, 1948, the city brought itself within chapter 44, Laws of 1935. By ordinance No. 882, passed August 30, 1949, the city adopted a comprehensive zoning plan which complied with the state zoning act.

Ordinance No. 973, adopted April 20, 1954, amended ordinance No. 882, § 14, to provide that the city might amend the zoning plan "upon its own motion and after public hearing," thus deleting from the ordinance passed in compliance with the state zoning act the necessity of the "concurrence of the planning commission" in proposed amendments.

Assuming, *arguendo,* that chapter 44, Laws of 1935, requires "concurrence of the planning commission" in zoning plan amendments, it follows that the city could not dispense with such concurrence and remain under the act. The city, having the discretionary power under § 2 to put itself under the act, likewise had the power to withdraw therefrom. It did so in effecting the deletion above discussed.

In making zoning regulations after the adoption of ordinance No. 973, the city was exercising its police power granted by Art. XI, § 11, of the state constitution, and as authorized by the legislature in its grant of general powers to cities of the second class. See RCW 35.23.440 (19) (56) [*cf.* Rem. Rev. Stat., § 9034]. The zoning ordinance adopted by the city of Centralia was not in conflict with the general laws of the state. The legislative act did not make it mandatory that a city qualify under chapter 44, Laws of 1935, before a city could establish a zoning procedure and plan. The legislature did not, by this act, pre-empt the field of zoning. Centralia's zoning procedure and plan are concurrent, and not in conflict, with the state's zoning program as provided for in chapter 44, Laws of 1935. Not being in conflict with the general laws of the state, Centralia's zoning

ordinance was a proper exercise of the city's police power.

Finally, I do not believe that the legislature intended that *a planning commission should have veto power over the legislative body that created it.* Such veto power allows an appointive body to thwart the objectives of elected officials who are responsible for the passage of city legislation, and who are answerable to the electorate.

Section 10, chapter 44, Laws of 1935, p. 120, sets out *all* of the powers the legislature intended to grant to planning commissions as follows:

"Any such commission is authorized and empowered to act as the research and fact finding agency of city or county. To that end it may make such surveys, analyses, researches and reports as are generally authorized or requested by its council or board, or by the state council with the approval of its council or board. Any such commission, upon such request or authority, is further empowered and authorized:

"(1) to make inquiries, investigations and surveys concerning the resources of the county;

"(2) to assemble and analyze the data thus obtained and to formulate plans for the conservation of such resources and the systematic utilization and development thereof;

"(3) to make recommendations from time to time as to the best methods of such conservation, utilization and development;

"(4) to cooperate with other commissions, with the state council and with other public agencies of the municipality, state and United States in such planning, conservation and development; and

"(5) in particular to cooperate with and aid the state council within its territorial limits in the preparation of the state master plan provided for in section 3, chapter 54 of the Special Session Laws of 1933, and in advance planning of public works programs."

The *specific powers* which the legislature granted to the commission are to make inquiries, to assemble and analyze data, to make recommendations, to cooperate with other commissions, and, in particular, to cooperate with and aid the state council. The power to *veto* the action of the council or board that created the commission is not included among those powers expressly granted. I am firmly of the opinion that, if the legislature had intended to grant veto

power in this respect, it would have expressly granted such power in § 10, in which section all of the powers the legislature intended to grant are specifically enumerated.

For the reasons stated, the judgment should be reversed.